# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH CAMPBELL
422 Glen Arbor Court
King of Prussia, PA 19406,

     Plaintiff,

v.

BOARD OF DIRECTORS OF
BRYN MAWR TRUST COMPANY
801 Lancaster Avenue
Bryn Mawr, PA 19010,

and

BRITTON H. MURDOCH, CHAIRMAN
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

ANDREA F. GILBERT, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

WENDELL F. HOLLAND, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

SCOTT M. JENKINS, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

Case No.

DIEGO F. CALDERIN, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

FRANCIS J. LETO, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

LYNN B. MCKEE, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

MICHAEL J. CLEMENT, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

A. JOHN MAY, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

KEVIN TYLUS, DIRECTOR
c/o Bryn Mawr Trust Company
801 Lancaster Avenue
Bryn Mawr, PA 19010

and

ROYAL BANK SUPPLEMENTAL
EXECUTIVE RETIREMENT PLAN
801 Lancaster Avenue

Bryn Mawr, PA 19010,

Defendants

---

### COMPLAINT

Plaintiff Joseph Campbell ("Mr. Campbell"), through his undersigned counsel and for his Complaint against Defendants the Board of Directors of Bryn Mawr Trust Company ("the Board"), Directors Britton H. Murdoch, Andrea F. Gilbert, Wendell F. Holland, Scott M. Jenkins, Diego F. Calderin, Francis J. Leto, Lynn B. McKee, Michael J. Clement, A. John May, Kevin Tylus ("the Director Defendants"), and the Royal Bank Supplemental Executive Retirement Plan ("the Plan") (collectively "Defendants"), states as follows:

### INTRODUCTION

1.      Mr. Campbell brings this action for additional Plan benefits pursuant to Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendants as a result of their failure to properly calculate the lump sum distribution of retirement benefits owed to him upon the termination of the Plan.

### THE PARTIES

2.      Mr. Campbell is the former President and Chief Executive Officer of Royal Bank America ("Royal Bank") and a participant in the Plan.

3.      The Plan is an employee pension benefit plan governed by ERISA as defined by Section 3 of ERISA, 29 U.S.C § 1002. A copy of the Plan is appended hereto as Exhibit A. The Plan's "Administrator," as that term is defined in the Plan and Section 3 of ERISA, 29 U.S.C. § 1002, is the Board of Directors of Royal Bank. *Id.*

4.      On or about December 15, 2017, Bryn Mawr Trust Bank Corporation, the parent company of Bryn Mawr Trust Company, completed an acquisition of Royal Bancshares of Pennsylvania, Inc., the parent company of Royal Bank. As a result of that acquisition, the Board, as the successor to the Board of Directors of Royal Bank, serves as the Plan's current Administrator.

5.      The Board operates from Bryn Mawr Trust Company's corporate headquarters, which is located at 801 Lancaster Avenue, Bryn Mawr, Pennsylvania.

6.      Defendant Britton H. Murdoch is the Chairman of the Board.

7.      Defendant Francis J. Leto is a member of the Board and the President and Chief Executive Officer of Bryn Mawr Trust.

8.      Defendant Andrea F. Gilbert is a member of the Board.

9.      Defendant Wendell F. Holland is a member of the Board.

10.     Defendant Scott M. Jenkins is a member of the Board.

11.     Defendant Diego F. Calderin is a member of the Board.

12.     Defendant Lynn B. McKee is a member of the Board.

13.     Defendant Michael J. Clement is a member of the Board.

14.     Defendant A. John May is a member of the Board.

15.     Defendant Kevin Tylus is a member of the Board.

## JURISDICTION AND VENUE

16.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA – a law of the United States – and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

17.     At all relevant times, the Plan was and is administered in the Eastern District of Pennsylvania.  Venue is thus proper in the United States District Court for the Eastern District of Pennsylvania.  29 U.S.C. § 1132(e)(2).

18.     The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Division, and Defendants are domiciled in and/or regularly transact business in this District and Division.

19.     Section 503 of ERISA, 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit claim denials.  Those avenues of appeal have been exhausted.

## FACTS COMMON TO ALL COUNTS

20.     The Plan provides retirement benefits to qualified Plan participants who satisfy the Plan's criteria for receiving retirement payments.

21.     The Plan purports to be a supplemental executive retirement plan or "top hat plan" that is exempt from ERISA's funding and fiduciary requirements.

22.     Mr. Campbell is, as is noted above, a participant in the Plan.

23.     Mr. Campbell retired from Royal Bank in 2009 and commenced receiving his retirement benefits under the Plan as of January 1, 2010.

24.     Mr. Campbell received his monthly benefits without incident from January 1, 2010 through November 2017.

25.     On or about December 26, 2017, Mr. Campbell received a Notice of Termination and Liquidation of the Royal Bank America Supplemental Executive Retirement Plan dated December 19, 2017 ("the Notice").

26.     The Notice advised Mr. Campbell that, as a result of the Bryn Mawr Trust Company's acquisition of Royal Bank, the SERP would be terminated, and his SERP benefit would be paid to him in a lump sum benefit.

27.     The Plan contains two provisions that address a change of control of Royal Bank.

28.     First, Section 6.2 of the Plan provides in pertinent part:

. . . Furthermore, if at the time a Change of Control occurs, the Bank had established a trust in accordance with Section 9.5 hereof, the Bank shall be required to transfer cash and/or other assets to said trust in an amount equal to the discounted present value of all of the future benefits payable hereunder to each Participant and Beneficiary. **If the Bank had not previously established a trust in accordance with Section 9.5 hereof, a trust shall be established at the time a Change of Control occurs, and the above funding requirements will apply to said trust. The discount rate shall be the 5-Year United States Treasury Note rate as published on the first day of the month immediately preceding the date on which the determination is made, compounded annually.** If these rates are no longer published, the discount rate shall be some other similar average selected by the Board in its sole discretion.

Exhibit A at Sec. 6.2 (emphasis added).                                          .

29.     In addition, Section 9.7 of the Plan permits a termination of the plan following a change of control pursuant to Section 409A of the Internal Revenue Code. It provides:

Notwithstanding anything to the contrary in Section 9.6 [relating to plan terminations generally], if the Bank terminates the Plan in the following circumstances: (a) Within thirty (30) days before, or twelve (12) months after a Change in Control, provided that all distributions are made no later than twelve (12) months following such termination of the Plan and further provided that all the Company's plans and arrangements which are substantially similar to the Plan are terminated so the Participants and all participants in similar plans and arrangements are required to receive all amounts of compensation deferred under the terminated plans and arrangements within twelve (12) months of the termination of the plans and arrangements;

. . .

the Bank may distribute benefits under the Plan, to the Participants, in a lump sum **subject to the above terms**.

*Id.* at Sec. 9.7 (emphasis added).

30.     The Plan does not identify the mortality assumption to be used in calculating a lump sum distribution under Section 9.7, or otherwise.  The "above terms" referenced in Section 9.7 of the Plan, however, are the funding requirements in section 6.2 of the Plan.

31.     The Board terminated Mr. Campbell's retirement benefit in December 2017 and paid him a lump sum amount that month.

32.     Mr. Campbell subsequently learned that the Board used a 3.42% discount rate and a RP2014@2017 mortality assumption in calculating the gross value of the lump sum distribution of his Plan benefits.

33.     The discount rate the Board used was not the 5-Year United States Treasury Note rate as published on the first day of the month immediately preceding the valuation of Mr. Campbell's benefit, as is required by Sections 6.2 and 9.7 of the Plan.  Rather, the Board used the Citi Pension Liability Index.

34.     On December 1, 2017, 5-Year United States Treasury Note rate was 2.116% per annum.

35.     By using the Citi Pension Liability Index as opposed to the 5-Year United States Treasury Note rate to value Mr. Campbell's lump sum distribution from the Plan, the value of Mr. Campbell's lump sum distribution from the Plan was artificially and incorrectly reduced by several hundred thousand dollars.

36.     On January 23, 2018, Mr. Campbell submitted a claim for additional Plan benefits to the Board and Plan based on the usage of the incorrect discount rate in calculating Mr. Campbell's lump sum distribution from the Plan.

37.     The Board denied Mr. Campbell's claim by way of a letter dated May 18, 2018 in which the Board contended, among other things, that the Plan mandated the use of the Citi Pension Liability Index to value Mr. Campbell's benefit.

38.     On July 20, 2018, Mr. Campbell submitted a timely appeal of the Board's denial of his claim for additional Plan benefits.

39.     The Board denied Mr. Campbell's appeal by way of a letter dated November 15, 2018.

## CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B)

40.     Mr. Campbell repeats, reaffirms, and realleges paragraphs 1 through 39 of the Complaint as if they were fully restated at length herein.

41.     Mr. Campbell has exhausted his so-called "administrative remedies" under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

42.     The Board's interpretation of the Plan, given its status as a "top hat plan," is to be reviewed *de novo* as a unilateral contract as a matter of law.  As such, any ambiguity in the Plan is to be construed against the Board, as the successor to the drafter of the Plan, as a matter of law.

43.     The Board erred in calculating the lump sum value of Mr. Campbell's retirement benefits under the Plan when terminating the Plan by using the Citi Pension Liability Index as opposed to the 5-Year United States Treasury Note rate as of December 1, 2017.

44.     The calculation of Mr. Campbell's lump sum distribution and subsequent denial of Mr. Campbell's claim for benefits was contrary to the terms of the Plan.

45.     The Board's calculation of Mr. Campbell's lump sum distribution and subsequent denial of Mr. Campbell's claim for benefits violated its duty of good faith and fair dealing to him.

46.     Defendants failed to provide Mr. Campbell with a full and fair review of his claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

47.     Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

48.     As a result of Defendants' denial of Mr. Campbell's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Mr. Campbell to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Mr. Campbell prays the Court grant him the following relief with respect to his Complaint:

a.   That the Court enter judgment in favor of Mr. Campbell and against Defendants, and award him additional retirement benefits under the Plan with interest;

b.   That the Court order Defendants to pay Mr. Campbell prejudgment interest on all benefits that have accrued prior to the date of judgment;

c.   That the Court award Mr. Campbell his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

d.   That Mr. Campbell recovers any and all other relief to which he may be entitled.

Respectfully submitted,

Adam Harrison Garner (Bar I.D. 320476)
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com

Dated: February 25, 2019

# Exhibit A

<u>M E M O</u>

June 1, 2007

**TO:**       All SERP Participants

**FROM:**     Jim McSwiggan

     Attached please find a copy of the SERP Plan referred to in the SERP Agreement you received last month.  Please retain this copy for your files.  Thank you.

JJMcS/pb

Attachment

# ROYAL BANK AMERICA

# SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN ("SERP")

# TABLE OF CONTENTS

Page

SECTION 1 - STATEMENT OF PURPOSE ...................................................................................1

SECTION 2 - DEFINITIONS ....................................................................................................1

SECTION 3 - ELIGIBILITY, PARTICIPATION AND VESTING .............................................5

SECTION 4 - RETIREMENT BENEFIT ....................................................................................5

SECTION 5 - PRE-RETIREMENT SURVIVOR BENEFIT ........................................................7

SECTION 6 - TERMINATION OF EMPLOYMENT..................................................................8

SECTION 7 - DISABILITY BENEFIT AND AUTHORIZED LEAVE OF ABSENCE ..........9

SECTION 8 - RESTRICTIVE COVENANT...............................................................................10

SECTION 9 - ADMINISTRATION............................................................................................10

SECTION 10 - COMPANY-OWNED LIFE INSURANCE ("COLI").......................................13

SECTION 11 - MISCELLANEOUS..........................................................................................14

SECTION 12 - CONSTRUCTION ............................................................................................16

SL1 685815v3/101445.00004

## SECTION 1 - STATEMENT OF PURPOSE

This Plan (as herein defined) is designed and implemented for the purpose of providing to a limited group of key management or highly compensated employees of the Bank (as herein defined), who are largely responsible for the Bank's success, the opportunity to receive deferred compensation in the form of supplemental executive retirement benefits, thereby increasing the incentive of such key employees to remain in the employ of the Bank and to make the Bank more profitable. Special payments shall be made to Participants (as herein defined) upon retirement or death and are intended to provide Participants with additional financial security.

Effective January 1, 2005, the Plan has been amended and restated to implement certain amendments adopted by the Board and to comply with the terms of Section 409A of the Code (as herein defined).

## SECTION 2 - DEFINITIONS

2.1. "Accrued Benefit" means a Participant's normal retirement benefit, as described in Section 4.1 hereof, multiplied by a fraction, the numerator of which is the Participant's total number of Years of Service with the Bank at the time of determination, and the denominator of which is the aggregate number of Years of Service with the Bank the Participant would have accumulated at his or her Normal Retirement Age.

2.2. "Actuarial Equivalent" means, with respect to a given benefit, any other benefit provided under the terms of the Plan which has the same present or equivalent value on the date the given benefit payment commences, based on the use of actuarial equivalent factors adopted by the Bank and being used to value the Plan liabilities at the time of the calculation.

2.3. "Bank" means Royal Bank America, a Pennsylvania corporation, also doing business as the Royal Bank, including any subsidiaries, successors and assigns thereto.

2.4. "Beneficiary" means any person or persons designated by a Participant in writing on a form satisfactory to the Bank. In the absence of any living designated beneficiary, a deceased Participant's Beneficiary shall be the deceased Participant's then living spouse, if any, for his or her life; if none, or from and after such spouse's death, then the living children of the

1

deceased Participant, if any, in equal shares, for their joint and survivor lives; and if none, or after their respective joint and survivor lives, the estate of the deceased Participant.

2.5. "Board" means the Board of Directors of the Bank.

2.6. "Change of Control" means the purchase or other acquisition by any person, entity or group of persons, within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934 (hereinafter called "Act"), or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13e-3 promulgated under the Act) of thirty percent (30%) or more of either the outstanding shares of common stock or the combined voting power of the Bank's then outstanding voting securities entitled to vote generally, or the approval by the shareholders of the Bank of a reorganization, merger, or consolidation, in each case, with respect to which persons who were shareholders of the Bank immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated the Bank's then outstanding securities, or a liquidation or dissolution of the Bank. or of the sale of all or substantially all of the Bank's assets.

2.7. "Compensation Committee" means the committee appointed by the Board pursuant to Section 9.4 that is authorized to oversee, administer and amend the Plan.

2.8. "Company" means Royal Bancshares of Pennsylvania, Inc. including any subsidiaries, successors and assigns thereto.

2.9. "Code" means the Internal Revenue Code of 1986, as amended.

2.10. "Disability" means the Participant (a) is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, or (b) is, by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, receiving income replacement benefits for a period of not less

2

1   than 3 months under an accident and health plan covering employees of the participant's

2   employer.

3           2.11. "Early Retirement Date" means a date on which a Participant retires from

4   the Bank on or after attaining age fifty-five (55) and at least one (1) year of Participation in the

5   Plan, then having completed at least ten (10) years of employment service with the Bank.

6           2.12. "Effective Date" means January 1, 1998.

7           2.13.  "High Average Recognized Compensation" means the Recognized

8   Compensation (as defined herein) of a Participant for each of the three (3) consecutive calendar

9   years of his or her employment service with the Bank which produce the highest annual average.

10   If a Participant has been in the employ of the Bank for more than one (1) calendar year but less

11   than three (3) calendar years, then the High Average Recognized Compensation for that

12   Participant shall be based upon that Participant's actual calendar years of service.  If a Participant

13   has served with the Bank for less than one (1) year, then the High Average Recognized

14   Compensation for that Participant shall be equal to the Participant's Recognized Compensation.

15   If necessary under the Participant's SERP Agreement, High Average Salary Compensation

16   (based solely of the Participant's salary) and High Average Bonus Compensation shall be

17   determined separately, but shall be based on the same years.

18           2.14. "Normal Retirement Age" means the date on which a Participant attains age

19   sixty (60) and has completed at least one (1) year of Participation in the Plan.

20           2.15. "Participant" means an employee of the Bank selected by the Board for

21   participation in the Plan in accordance with Section 3 hereof, and who has not for any reason

22   become ineligible to participate further in this Plan.  An individual shall be deemed to continue

23   as a Participant until all benefits payable to the Participant under this Plan have been distributed.

24           2.16. "Plan" means the Royal Bank Supplemental Executive Retirement Plan

25   ("SERP") as contained in this document, including all amendments thereto.

26           2.17. "Plan Year" means the twelve month period commencing on January 1 of

27   each year and ending the following December 31.

1        2.18. "Recognized Compensation" means the annual compensation level to be

2  used for purposes of the Plan in determining the amount of benefits to which a Participant is

3  entitled. Each Participant's Recognized Compensation shall be that amount listed in that

4  Participant's SERP Agreement (as herein defined) as such amount may be amended from time to

5  time by the Compensation Committee. Recognized Compensation can be arbitrarily set by the

6  Compensation Committee, may include such percentage of a Participant's annual bonus as may

7  be determined by the Compensation Committee and need not be the same as the Participant's

8  base salary or W-2 compensation.

9        2.19. "SERP Agreement" means a written agreement between a Participant and

10  the Bank in substantially the form attached hereto as Exhibit A.

11        2.20. "Specified Employee" means, as determined pursuant to Section 409A of

12  the Code and regulations thereunder, a key employee (as defined in Section 416(i) of the Code

13  without regard to paragraph 5 thereof) of the Bank if any stock of the Bank or the Company is

14  publicly traded on an established securities market or otherwise.

15        2.21. "Termination for Cause" means the termination of a Participant's

16  employment with the Bank for any one or more of the following reasons:  (a) fraud,

17  misappropriation or intentional material damage to the property or operation of the Bank;

18  (b) conviction of a felony; or (c) continuance of failure by the Participant to perform his or her

19  duties after written notice to the Participant by the Bank's Board specifying such failure,

20  provided that such failure shall have been found by a two-thirds (2/3) majority vote of the

21  members of the Board other than the Participant.

22        2.22. "Year of Service" means a period of twelve consecutive months during

23  which a Participant is employed by the Bank and performs at least 1,500 hours of service.

24  Unless otherwise provided in his or her SERP Agreement, in determining a Participant's Years

25  of Service, he or she shall receive credit for service from and after his or her most recent

26  employment commencement date.

SL1 685815v3/101445.00004

### SECTION 3 - ELIGIBILITY, PARTICIPATION AND VESTING

**3.1. Eligibility**.  The Board, in its sole discretion, shall select the employees of the Bank who are eligible to become Participants.  Notwithstanding the foregoing, effective January 1, 2003, in order to become a Participant in the Plan, an employee of the Bank must have completed a minimum of 10 Years of Service.

**3.2. Participation**.  The Board or its designee shall notify those employees selected for participation of the benefits available under the Plan.  An eligible employee becomes a Participant in the Plan upon the execution and delivery by him or her and the Bank of a SERP Agreement.  Thereafter, a Participant shall remain a Participant as long as he or she is continuously employed by the Bank.

**3.3. Suicide**.  Notwithstanding any other term or provision of this Plan or any SERP Agreement, this Plan and the applicable SERP Agreement shall be void and of no force or effect with respect to any Participant who dies by reason of suicide within two (2) years after the date of his or her SERP Agreement, and no benefit of any kind shall be payable under this Plan to such Participant, his or her Beneficiary or any other person claiming under him or her.

**3.4. Vesting**.  If a Participant was a Participant in the Plan prior to January 1, 2003, upon attaining Normal Retirement Age such Participant shall be 100% vested in his or her benefit under the Plan.  Otherwise, a Participant shall be 100% vested in his or her benefit under the Plan upon completing 10 Years of Service.

### SECTION 4 - RETIREMENT BENEFIT

**4.1. Normal Retirement Benefit**.

(a) If a Participant is continually employed by the Bank until his or her Normal Retirement Age, his or her normal retirement benefit shall be an annual benefit equal to that percentage of his or her High Average Recognized Compensation specified in his or her SERP Agreement.

5

(b) If the Participant terminates employment on the date he or she attains his Normal Retirement Age, the normal retirement benefit shall be payable in equal monthly installments commencing on the first day of the month following the Participant's Normal Retirement Age and continuing for the remainder of the Participant's life.

(c) If the Participant terminates employment after the date he attains his Normal Retirement Age, then he or she shall receive a benefit payable in equal monthly installments commencing on the first day of the month following the Participant's retirement and continuing for the remainder of the Participant's life. If specifically provided in the Participant's individual SERP Participation Agreement, the benefit payable shall be increased to be the Actuarial Equivalent of the benefit the Participant would have received had the Participant retired on the date he or she attained Normal Retirement Age.

4.2. **Early Retirement Benefit**. If a Participant is continually employed by the Bank until his or her Early Retirement Date, he or she shall be entitled to receive an early retirement benefit equal to the Actuarial Equivalent amount of his or her Accrued Benefit. This early retirement benefit shall be payable in equal monthly installments commencing on the first day of the month following the Participant's actual retirement, continuing for the remainder of the Participant's life.

4.3. **Death After Commencement of Retirement Benefit**. If, after commencement of benefits under Section 4.1 or 4.2, a Participant should die prior to the completion of one-hundred-twenty (120) monthly payments, such monthly payments shall be continued to the Participant's Beneficiary until the completion of one-hundred-twenty (120) combined monthly payments.

4.4. **Alternate Form of Payment**. The Bank may, in its sole and absolute discretion, approve a retiring Participant's request of an alternate form of life annuity in which case such payments shall be in the amount of the Actuarial Equivalent of the normal form of benefit hereunder. No installment or lump sum payments shall be permitted under this Section 4.4.

SL1 685815v3/101445.00004

1          **4.5.** **Forfeiture of Benefits**.  Notwithstanding the foregoing provisions of this

2    Section 4, a Participant shall forfeit all benefits under the Plan if his or her employment with the

3    Bank terminates by reason of a Termination for Cause or if he or she violates the restrictive

4    covenant set forth in Section 8 hereof.

5          **4.6.** **Loan of Portion of Benefits**.  In the event that the Participant or his or her

6    Beneficiary is required to include an amount in taxable income for any year in excess of the

7    actual cash payments made under this Plan to the Participant or Beneficiary in such year (the

8    "Excess Income"), the Bank shall loan to the Participant or Beneficiary an amount equal to the

9    Excess Income multiplied by a percentage equal to the marginal tax rate applicable to inclusion

10   of the Excess Income in the taxable income of the Participant or Beneficiary, plus the amount of

11   any penalties or interest assessed by the Internal Revenue Service with respect to the Excess

12   Income (the "Loan").  The Loan shall be evidenced by a note payable to the Bank in 120 equal

13   monthly installments, commencing the first month in which benefits become payable, including

14   interest at the rate determined by the Board but not in excess of the prime lending rate as

15   published in the Wall Street Journal as of the date of the Loan.  If the Wall Street Journal prime

16   rates are no longer published, the interest rate shall be based on some other similar published rate

17   selected by the Board in its sole discretion.  The Bank shall reduce the amount of the monthly

18   benefit payments hereunder to the Participant or Beneficiary by the amount of the monthly

19   payments on the Loan.

20                 **SECTION 5 - PRE-RETIREMENT SURVIVOR BENEFIT**

21          **5.1.** **Survivor Benefit**.

22          (a)  If a Participant dies while employed by the Bank but prior to the

23   Participant's Early Retirement Date, the Bank shall pay to the Beneficiary of the

24   Participant the survivor benefit specified in the Participant's SERP Agreement.  This

25   survivor benefit shall be equal to that percentage of his or her Recognized Compensation

26   specified in his or her SERP Agreement.  This benefit shall be payable in equal monthly

27   installments commencing on the first day of the month following the Participant's death

28   and continuing for sixty (60) months.

7

1         (b)  If a Participant dies while employed by the Bank and on or after the

2    Participant's Early Retirement Date, the Bank shall pay to the Beneficiary of the

3    Participant the survivor benefit specified in the Participant's SERP Agreement.  This

4    survivor benefit shall be equal to that percentage of his or her Recognized Compensation

5    specified in his or her SERP Agreement.  This benefit shall be payable in equal monthly

6    installments commencing on the first day of the month following the Participant's death

7    and continuing for one hundred twenty (120) months.

8    **SECTION 6 - TERMINATION OF EMPLOYMENT**

9    6.1.  **Termination Benefit**.  If a Participant terminates employment with the

10   Bank prior to attaining his or her Early Retirement Date, other than by reason of death or

11   Disability, said Participant shall be entitled to that vested portion of his or her Accrued Benefit as

12   specified in his or her SERP Agreement; provided, however, that in the event the Participant is

13   subsequently (1) removed or prohibited from being an institutional-affiliated party by a final

14   order of the appropriate federal banking agency, pursuant to Section 8(e) of the Federal Deposit

15   Insurance Act or by the Pennsylvania Department of Banking pursuant to state law, or (2) is

16   convicted of a crime for which the criminal activity charged primarily involved conduct engaged

17   in while an employee or director of the Bank, the Bank shall have no obligation to make future

18   payments as of the date of the final order or conviction, as the case may be.

19   6.2.  **Change of Control**.  Notwithstanding anything to the contrary herein, if a

20   Participant's employment with the Bank is terminated, other than by retirement, death,

21   Disability, or Termination for Cause, within two (2) years of a Change of Control of the Bank,

22   then, for purposes of this Plan, it shall be deemed that the Participant has remained in the employ

23   of the Bank until the earlier to occur of:  (a) the Participant's death; or (b) the Participant's

24   attaining his or her Normal Retirement Age, except as provided in Section 4.2 herein.

25   Furthermore, if at the time a Change of Control occurs, the Bank had established a trust in

26   accordance with Section 9.5 hereof, the Bank shall be required to transfer cash and/or other

27   assets to said trust in an amount equal to the discounted present value of all of the future benefits

28   payable hereunder to each Participant and Beneficiary.  If the Bank had not previously

29   established a trust in accordance with Section 9.5 hereof, a trust shall be established at the time a

SL1 685815v3/101445.00004

1   Change of Control occurs, and the above funding requirements will apply to said trust.  The

2   discount rate shall be the 5-Year United States Treasury Note rate as published on the first day of

3   the month immediately preceding the date on which the determination is made, compounded

4   annually.  If these rates are no longer published, the discount rate shall be some other similar

5   average selected by the Board in its sole discretion.

6         **6.3.** **Restriction of Timing of Distributions**.  Notwithstanding any provision of

7   this Plan to the contrary, if the Participant is considered a Specified Employee at termination of

8   employment under such procedures as established by the Bank in accordance with Section 409A

9   of the Code, benefit distributions that are made by reason of termination of employment may not

10   commence earlier than six (6) months after the date of such termination of employment.

11   Therefore, in the event this Section 6.3 is applicable to a Participant, any distribution that would

12   otherwise be paid to the Participant within the first six months following the termination of

13   employment shall be accumulated and paid to the Participant in a lump sum on the first day of

14   the seventh month following the termination of employment.  All subsequent distributions shall

15   be paid in the manner specified.

16         **SECTION 7 - DISABILITY BENEFIT AND AUTHORIZED**

17         **LEAVE OF ABSENCE**

18         **7.1.** **Disability Benefit**.  Notwithstanding anything to the contrary herein, if a

19   Participant's employment with the Bank is terminated prior to attaining his or her Early

20   Retirement Date as a result of the Participant's Disability, then, for purposes of this Plan, it shall

21   be deemed that the Participant has remained in the employ of the Bank until the earliest to occur

22   of:  (a) the Participant's death; (b) the Participant's attaining his or her Normal Retirement Age,

23   except as provided in Section 4.2 herein; or (c) the cessation of the Participant's Disability and

24   the failure of the Participant to return to active employment with the Bank within a reasonable

25   time after recovery from the Disability.

26         **7.2.** **Authorized Leave of Absence**.  A Participant's employment with the Bank

27   shall not be deemed to have terminated for purposes of this Plan during any authorized leaves of

28   absence.

9

1

## SECTION 8 - RESTRICTIVE COVENANT

2       8.1. <u>Restrictive Covenant</u>.  It shall be a condition to the payment of benefits

3 under this Plan that, during the first three-year period after termination of employment or

4 retirement, the Participant does not (i) own, manage, operate, join, control, be employed by, or

5 participate in the ownership, management, operation, or control of any business or entity within

6 the Philadelphia SMSA (Standard Metropolitan Statistical Area) if such ownership, management,

7 operation, joining, control, employment or participation will or could reasonably be expected to

8 harm the business, profitability, business interests or reputation of the Bank, or (ii) disclose any

9 information deemed to be confidential or a trade secret, as described in the following paragraph,

10 to anyone who is not a current Bank employee without the express written permission of the

11 Bank, with said written permission having been duly authorized by the Bank's Board of

12 Directors.

13       The Participant acknowledges and agrees that Participant has access to certain

14 confidential and sensitive information relating to the Bank incident to Participant's employment

15 by the Bank, including, but not limited to, information pertaining to:  (i) the identity of the

16 Bank's customers and customer prospects; (ii) the special needs of the Bank's customers;

17 (iii) confidential market studies, information and analyses; (iv) current and prospective services;

18 (v) business projections; (vi) business plans and strategies; (vii) financial statements and

19 information; and (viii) special services of the Bank.  The Participant acknowledges and agrees

20 that this information, if disclosed, could place the Bank at a competitive disadvantage.

21 Consequently, the Participant acknowledges and agrees that such information constitutes a trade

22 secret, and the Participant acknowledges and agrees not to disclose such information to any

23 person who is not a current employee of the Bank at any time prior to, or subsequent to, the

24 termination of employment or retirement, without the express written consent of the Bank.

25

## SECTION 9 - ADMINISTRATION

26       9.1. **General**.  The Plan shall be administered by the Board or its designee.  The

27 Board shall have the authority, subject to the terms of the Plan, to construe the provisions of the

28 Plan and to adopt rules and regulations and make all determinations necessary or advisable for

29 the administration of the Plan.  The Board shall make all determinations as to rights to benefits

10

1    under the Plan.  No member of the Board shall be liable for any action of determination made in

2    good faith with respect to the Plan or any SERP Agreement.  Any decision by the Board denying

3    a claim by a Participant or a Beneficiary for benefits under the Plan shall be stated in writing and

4    delivered or mailed to the Participant or Beneficiary at his or her last known address.  Such

5    decision shall set forth the specific reasons for the denial of benefits.  In addition, the Board shall

6    afford a reasonable opportunity to the Participant or Beneficiary for a full and fair review of the

7    decision denying such claim within thirty (30) days of such notice.

8        9.2.  **Participant Statement**.  The Bank shall provide each Participant on an

9    annual basis with a statement showing that Participant's current and projected survivor income

10   benefit and retirement benefit under the Plan.

11       9.3.  **Interpretation**.  The interpretation and construction of the Plan by the

12   Board, and any action taken hereunder, shall be binding and conclusive upon all parties in

13   interest.  No member of the Board shall be liable to any person for any action taken or omitted to

14   be taken in connection with the interpretation, construction or administration of the Plan, so long

15   as such action or omission be made in good faith.

16       9.4.  **Authority to Appoint a Committee**.  The Board, within its discretion, shall

17   have the authority to appoint a Compensation Committee of not less than three (3) of its

18   members which shall have authority over the Plan in lieu of the entire Board.

19       9.5.  **Authority to Establish a Trust**.  The Board shall have the right at any time

20   to establish a trust to which the Bank may transfer from time to time certain assets to be used by

21   said trustee(s) to satisfy some or all of the Bank's obligations and liabilities under the Plan.  All

22   assets held by such trust shall be subject to the claims of the Bank's creditors in the event of the

23   Bank's Insolvency (as defined herein).  The Bank shall be considered "Insolvent" for purposes of

24   said trust if:  (a) the Bank is unable to pay its debts as they become due; and (b) the Bank is

25   subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

26       9.6.  **Amendment and Termination of the Plan**.  The Bank reserves the right, at

27   any time and from time to time, by action of the Board, to amend or terminate the Plan, including

28   but not limited to the right to discontinue making premium contributions for any year for which

11

the Bank is not profitable.  Notwithstanding the foregoing, no such amendment or termination shall reduce or accelerate (a) the benefits (including survivor benefits) of a Participant (or Beneficiary) to whom payments under this Plan had then commenced, or (b) the Accrued Benefit (including survivor benefits) of a Participant who has not yet attained his or her Normal Retirement Age, or (c) the benefits (including survivor benefits) of a Participant who has then attained his or her Normal Retirement Age, or (d) the benefits (including survivor benefits) of a Participant whose employment with the Bank has been terminated.  In addition, each other Participant employed by the Bank on the date of such amendment or termination shall be entitled to benefits (including survivor benefits) under this Plan, at such time as such benefits would have been paid absent such amendment or termination, in an amount equal to the amount that would have been paid under the Plan if he or she had terminated employment on the day immediately preceding the date of such amendment or termination of the Plan.

9.7.  **Plan Terminations under Section 409A**.  Notwithstanding anything to the contrary in Section 9.6, if the Bank terminates the Plan in the following circumstances:

(a)  Within thirty (30) days before, or twelve (12) months after a Change in Control, provided that all distributions are made no later than twelve (12) months following such termination of the Plan and further provided that all the Company's plans and arrangements which are substantially similar to the Plan are terminated so the Participants and all participants in similar plans and arrangements are required to receive all amounts of compensation deferred under the terminated plans and arrangements within twelve (12) months of the termination of the plans and arrangements;

(b)  Upon the Bank's dissolution or with the approval of a bankruptcy court provided that the amounts deferred under the Plan are included in the Participants gross income in the latest of (i) the calendar year in which the Plan terminates; (ii) the calendar year in which the amount is no longer subject to a substantial risk of forfeiture or (iii) the first calendar year in which the distribution is administratively practicable; or

(c)  Upon the Bank's termination of this and all other account balance plans (as referenced in Section 409A of the Code or the regulations thereunder), provided that all distributions are made no earlier than twelve (12) months and no later than

12

1          twenty-four (24) months following such termination, and the Bank does not adopt any

2          new account balance plans for a minimum of five (5) years following the date of such

3          termination;

4    the Bank may distribute benefits under the Plan, to the Participants, in a lump sum subject to the

5    above terms.

6          **SECTION 10 - COMPANY-OWNED LIFE INSURANCE ("COLI")**

7          10.1.  **Bank Owns All Rights**.  In the event that, in its discretion, the Bank

8    purchases a life insurance policy or policies insuring the life of any Participant to allow the Bank

9    to informally finance and/or recover, in whole or in part, the cost of providing the benefits

10   hereunder, neither the Participant nor any Beneficiary shall have any rights whatsoever therein.

11   The Bank shall be the sole owner and beneficiary of any such policy or policies and shall possess

12   and may exercise all incidents of ownership therein, except in the event of the establishment of

13   and transfer of said policy or policies to a trust by the Bank as described in Section 8 hereof.

14         10.2.  **Participant Cooperation**.  If the Bank decides to purchase a life insurance

15   policy or policies on any Participant, the Bank will so notify each Participant.  Each Participant

16   shall consent to being insured for the benefit of the Bank and shall take whatever actions may be

17   necessary to enable the Bank to timely apply for and acquire such life insurance and to fulfill the

18   requirements of the insurance carrier relative to the issuance thereof as a condition of eligibility

19   to participate in the Plan.

20         10.3.  **Participant Misrepresentation**.  If:  (a) any Participant is required by this

21   Plan to submit information to any insurance carrier; and (b) the Participant makes a material

22   misrepresentation in any application for such insurance; and (c) as a result of that material

23   misrepresentation the insurance carrier is not required to pay all or any part of the proceeds

24   provided under that insurance, then the Participant's (or the Participant's Beneficiary's) rights to

25   any benefits under this Plan may be, at the sole discretion of the Board, reduced in proportion to

26   the reduction of proceeds that is paid by the insurance carrier because of such material

27   misrepresentation.

13

## SECTION 11 - MISCELLANEOUS

11.1. **Non-Alienation of Benefits**. No right or benefit under this Plan shall be subject to anticipation, alienation, sale, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, assign, pledge, encumber, or charge any right or benefit under this Plan or any SERP Agreement shall be void. No such right or benefit shall in any manner be liable for or subject to the debts, contracts, liabilities or torts of the person entitled thereto. If a Participant or any Beneficiary hereunder shall become bankrupt, or attempt to anticipate, alienate, sell assign, pledge, encumber, or charge any right hereunder, then such right or benefit shall, in the discretion of the Board, cease and terminate, and in such event, the Board may hold or apply the same or any part thereof for the benefit of the Participant or his or her Beneficiary, spouse, children, or other dependents, or any of them in such manner and in such amounts and proportions as the Board may deem proper.

11.2. **Unsecured Bank Liability**. The obligation of the Bank to make payments hereunder to a Participant shall constitute an unsecured liability of the Bank. Such payments shall be made from the general funds of the Bank, and the Bank shall not be required to establish or maintain any special or separate fund, to purchase or acquire life insurance on a Participant's life, or otherwise to segregate assets to assure that such payments shall be made. Neither a Participant nor any other person shall have any interest in any particular asset of the Bank by reason of its obligations hereunder, and the right of any of them to receive payments under this Plan shall be no greater than the right of any other unsecured general creditor of the Bank. Nothing contained in the Plan shall create or be construed as creating a trust of any kind or any other fiduciary relationship between the Bank and a Participant or any other person.

11.3. **No Employment Agreement**. Neither the execution of this Plan or any SERP Agreement nor any other action taken by the Bank pursuant to this Plan shall be held or construed to confer on a Participant any legal right to be continued as an employee of the Bank or to restrict the right of the Bank to terminate his or her employment.

11.4. **Designation of Beneficiary**. Each Participant shall file with the Bank a notice in writing, in a form acceptable to the Board, designating one or more Beneficiaries to whom payments becoming due by reason of or after his or her death shall be made. Participants

14

1   shall have the right to change the Beneficiary or Beneficiaries so designated from time to time;

2   provided, however, that no such change shall become effective until received in writing and

3   acknowledged by the Bank.

4         11.5.  **Payment to Incompetents**.  The Bank shall make the payments provided

5   herein directly to the Participant or Beneficiary entitled thereto or, if such Participant or

6   Beneficiary has been determined by a court of competent jurisdiction to be mentally or

7   physically incompetent, then payment shall be made to the duly appointed guardian, committee

8   or other authorized representative of such Participant or Beneficiary.  The Bank shall have the

9   right to make payment directly to a Participant or Beneficiary until it has received actual notice

10  of the physical or mental incapacity of such Participant or Beneficiary and actual notice of the

11  appointment of a duly authorized representative of his or her estate.  Any payment to or for the

12  benefit of a Participant or Beneficiary shall be a complete discharge of all liability of the Bank

13  therefore.

14        11.6.  **Claims for Benefits**.  Each Participant or other person claiming any benefit

15  under this Plan must give written notification thereof to the Bank.  If a claim is denied, it must be

16  denied within a reasonable period of time, and be contained in a written notice stating the

17  following:  (a) the specific reason for the denial; (b) specific reference to the Plan provision on

18  which the denial is based; (c) description of additional information necessary for the claimant to

19  present his or her claim, if any, and an explanation of why such material is necessary; (d) an

20  explanation of the Plan's claims review procedure.  The claimant will have 60 days to request a

21  review of any denial by the Board.  The request for review must be in writing and delivered to

22  the Board, which will then provide a full and fair review.  The claimant may review pertinent

23  documents, and he or she may submit issues and comments in writing.  The decision by the

24  Board with respect to the review must be given within 60 days after receipt of the request, unless

25  special circumstances require an extension (such as for a hearing).  In no event shall the decision

26  be delayed beyond 120 days after receipt of the request for review.  The decision shall be written

27  in a manner calculated to be understood by the claimant, and it shall include specific reasons and

28  refer to specific Plan provisions on which it is based.

1    **11.7.  Binding Effect**.  Obligations incurred by the Bank pursuant to this Plan
2  shall be binding upon and inure to the benefit of the Bank, its successors and assigns, and the
3  Participant, his or her Beneficiaries, personal representatives, heirs, and legatees.

4    **11.8.  Entire Plan**.  This document and any amendments hereto contain all the
5  terms and provisions of the Plan and shall constitute the entire Plan, any other alleged terms or
6  provisions being of no effect.

7    **11.9.  Merger, Consolidation or Acquisition**.  In the event of a merger or
8  consolidation of the Bank with another corporation or entity, or the acquisition of the outstanding
9  stock of the Bank by another corporation or entity, then and in such event the obligation and
10  responsibilities of the Bank under this Plan shall be assumed by any such successor or acquiring
11  corporation or entity, and all of the rights, privileges and benefits of the Participant hereunder
12  shall continue.

13    **11.10.  Enforceability**.  If any term or condition of this Plan shall be invalid or
14  unenforceable to any extent or in any application, then the remainder of the Plan, and such term
15  or condition except to such extent or in such application, shall not be affected thereby, and each
16  and every term and condition of the Plan shall be valid and enforced to the fullest extent and in
17  the broadest application permitted by law.

18    **SECTION 12 - CONSTRUCTION**

19    **12.1.  Governing Law**.  This Plan shall be construed and governed in accordance
20  with the laws of the Commonwealth of Pennsylvania, except to the extent preempted by the laws
21  of the United States of America.

22    **12.2.  Compliance with Section 409A**.  This Plan shall at all times be
23  administered and the provisions of this Plan shall be interpreted consistent with the requirements
24  of Section 409A of the Code and any and all regulations thereunder.

25    **12.3.  Gender**.  The masculine gender, where appearing in the Plan, shall be
26  deemed to include the feminine gender, and the singular may include the plural, unless the
27  context clearly indicates to the contrary.

1    12.4. **Headings, Etc**. All headings used in this Plan are for convenience of

2    reference only and are not part of the substance of this Plan.

3    IN WITNESS WHEREOF, this Plan, having been duly approved and adopted by

4    the Board of Directors of the Bank, is executed by the duly authorized officers of the Bank as of

5    the Effective Date.

6

7

8    ROYAL BANK AMERICA

9    By: _____

10   Dated: ____5/23/07____        Craig H. Fox, Trustee

11   (Corporate Seal)

12   Attest:

13   _____

14   Kadia Burkett,

15   Director of Human Resources

17